IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALICIA MARIE MARTIN.,

                Plaintiff,
  v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                Defendant.

OPINION and ORDER

22-cv-157-jdp

---

Plaintiff Alicia Martin seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding Martin not disabled within the meaning of the Social Security Act. Martin contends that the administrative law judge (ALJ) Rebecca LaRiccia, erred in two main ways: (1) the ALJ failed to adequately explain why she discounted the opinions of a treating nurse practitioner and physical therapist who opined that Martin could not sit for two hours at a time; and (2) the ALJ did not account for Martin's mental limitations in formulating Martin's residual functional capacity. The court discerns no errors in the ALJ's analysis of the medical opinions in the record, and Martin has not shown that she is entitled to more significant restrictions to address her mental limitations. The court will affirm the commissioner's decision.

BACKGROUND

Martin sought benefits based on physical and mental impairments, alleging disability beginning March 2019. R. 23.[1] Martin's claim was denied initially and on reconsideration, and Martin requested a hearing before an ALJ.

In a written decision, ALJ Rebecca LaRiccia found that Martin had severe impairments of degenerative disc disease, carpal tunnel syndrome of the left wrist, obesity, depression, attention deficit hyperactivity disorder, and anxiety. R. 25. The ALJ determined that Martin did not meet the criteria for any listed disability. R. 26. The ALJ ascribed to Martin the residual functional capacity (RFC) to perform sedentary work with some additional restrictions to address Martin's physical and mental limitations. R. 28. Relying on the testimony of a vocational expert, the ALJ concluded that Martin could perform a significant number of jobs available in the national economy, including addresser, document preparer, and escort vehicle driver. R. 37. The Appeals Council denied review, R. 13, so the ALJ's decision became the final decision of the commissioner.

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

---

[1] Record cites are to the administrative transcript located at Dkt. 8.

ANALYSIS

Martin contends that the ALJ erred by: (1) improperly discounting two medical opinions; and (2) failing to account for Martin's moderate limitation in concentrating, persisting, or maintaining pace in Martin's RFC.

## A. Medical opinions

Martin contends that the ALJ failed to adequately explain why she discounted the opinions of nurse practitioner Kathryn Puls and physical therapist Teresa Riley about Martin's ability to sit for prolonged periods. The ALJ must evaluate all medical opinions applying several factors including supportability, consistency, relationship with the claimant, and specialization. 20 C.F.R. § 404.1520c(b) and (c). But the most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(a).

Puls opined in August 2020 that Martin could sit, stand, or walk for less than two hours each during an eight-hour workday and that Martin needed to elevate her legs two to four hours per day, among other limitations not relevant here. R. 907. Riley opined that Martin could sit constantly but would need to reposition or stand up after approximately 40 minutes. R. 1006. The ALJ concluded that Puls and Riley's opinions were unpersuasive. More persuasive, the ALJ concluded, were the opinions of two agency consultants who determined in 2020 that Martin could sit (with normal breaks) for a total of six hours in an eight-hour workday. R. 134; R. 152. Accordingly, the ALJ limited Martin to sedentary work, which requires the ability to sit for six hours in an eight-hour workday. S.S.R. 96-9p. The ALJ did not adopt any restrictions related to Martin's need to reposition herself.

Martin challenges the ALJ's assessment of Puls and Riley's opinions about Martin's ability to sit on three main grounds: (1) the ALJ did not adequately explain why their opinions

3

were inconsistent with the record; (2) the ALJ did not acknowledge that their opinions were consistent with each other; and (3) the ALJ ignored other evidence that was consistent with their opinions.

### 1. Failure to explain inconsistency with the record

The ALJ concluded that Puls's opinions were not persuasive because they were inconsistent with evidence that Martin's pain had improved following surgery in 2019, her treatment for pain following the surgery was conservative, and Martin demonstrated normal gait and station, full strength and intact sensory findings in her upper and lower extremities, and negative straight-leg raise tests in exams. R. 34. As for Riley, the ALJ concluded that Riley's opinion about Martin's need to reposition herself was unpersuasive because Riley's statements about Martin's ability to sit and stand were vague, and Martin's pain had improved following her surgery. R. 35.

Martin contends that the ALJ did not explain why the evidence she cited was inconsistent with Puls and Riley's opinions. Specifically, Martin states that the ALJ did not explain how normal strength, intact sensation, and conservative treatment demonstrate that Martin is able to sit for two hours at a time. Whether the ALJ adequately explained why that evidence is inconsistent with Puls and Riley's opinions is a close question. The ALJ did not expressly explain how that evidence is relevant to Martin's ability to sit for extended periods, and the conflicts are not obvious. For example, a person could have normal strength and still experience pain while sitting down.

But the ALJ provided enough to allow the court to trace her reasoning on this issue, which is all that is required. *See Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). It appears that the sitting restrictions identified by Puls and Riley were intended to address Martin's

alleged inability to sit for more than three minutes without experiencing back pain. *See* R. 29. The evidence that the ALJ cited—that Martin had normal strength and had received conservative treatment following her surgery in 2019—undercuts Martin's allegations about the severity of her back pain, which suggests that she does not need such significant restrictions to accommodate that pain.

*Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020), is instructive here. The claimant in that case, Zoch, contended that the ALJ wrongly discounted the opinion of a treating physician who opined that Zoch required frequent position changes and could not perform sedentary work. The court of appeals concluded that the ALJ was entitled to discount the physician's opinion because it conflicted with other evidence in the record, including that Zoch "maintained normal strength in her upper extremities, had no pressure on her nerves, was not a surgical candidate, and walked normally." *Id.* at 602. In addition, the opinion was based on Zoch's subjective complaints of pain, which were themselves inconsistent with tests demonstrating normal "range of motion, straight-leg raising, strength in extremities, and pressure on [the claimant's] nerves," among other evidence. *Id.* at 601–02.

Here, the ALJ's reasons for discounting Puls and Riley's opinions about Martin's ability to sit are similar to the reasons that the ALJ offered in *Zoch*. The commissioner cited *Zoch* in her brief, *see* Dkt. 13, at 9, and Martin did not attempt to distinguish *Zoch* in her reply. The court concludes that it was permissible for the ALJ to determine that a restriction to sedentary work was inconsistent with tests demonstrating normal strength, gait, and straight-leg raising. *See also Ducharme v. Saul*, 20-CV-356-BBC, 2021 WL 1711787, at *4 (W.D. Wis. Apr. 30, 2021), *aff'd sub nom. DuCharme v. Kijakazi*, 21-2204, 2022 WL 3287974 (7th Cir. Aug. 11,

2022) (restriction to sedentary work because of back pain was inconsistent with normal gait, intact sensation, and normal muscle tone and strength).

As for conservative treatment, an ALJ may discount allegations of disabling pain on that basis. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022). The ALJ acknowledged that Martin underwent surgery on her back in December 2019, but noted that after the surgery Martin's treatment had been limited to use of a back brace, physical therapy, and narcotic pain medication. Martin successfully reduced her medication dosage from six tablets per day to four. R. 31. "[G]iven the deference [courts] show to an ALJ's factual determinations," the court of appeals has accepted an ALJ's conclusion that similar treatments are relatively conservative. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (narcotic pain medications, injections, and physical therapy); *Prill*, 23 F. 4th at 749 ("injections, orthotics, and physical therapy").

Martin argues for the first time in her reply brief that the ALJ was required to ask Martin why she did not seek more aggressive treatment. But Martin forfeited that argument because she did not include it in her opening brief. *See Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). In any case, the argument is not supported by the authority that Martin cites, *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). The principle in *Beardsley* is that the ALJ must account for the *claimant's* reasons for not pursuing recommended treatment, such as the desire to avoid invasive and painful surgery or the lack of insurance coverage. But that's not the problem here: Martin's health care providers recommended conservative treatment.

Puls and Riley opined that Martin could not sit for extended periods because of her back pain. But the ALJ credited the opinions of agency consultants who disagreed, and the ALJ cited evidence in the record that cast doubt on the conclusions of Puls and Riley. The ALJ was not required to articulate her reasoning in greater detail than she did.

6

### 2. Consistency between the opinions

Martin contends that the ALJ's analysis was inadequate because she did not address that Puls and Riley's opinions were consistent with each other. Martin argues that although the opinions differ in their assessment of Martin's limitations, the ALJ should have considered that both opinions would have precluded sedentary work.

Martin overstates the consistency of the two opinions. Although both Riley and Puls opined that Martin is more limited than the ALJ found, the opinions about the extent of Martin's limitations are quite different: Puls opined that Martin could sit for a total of only two hours in a day, R. 907, but Riley opined that Martin could sit constantly so long as she was able to reposition herself every 40 minutes, R. 1006.

But even if the opinions were consistent with each other, Martin's argument would still fail. There is no requirement that the ALJ expressly discuss whether each opinion is consistent with the other opinions in the record. Martin is correct that under the regulations applicable to her claim, the ALJ must address whether medical opinions are consistent with the record and that "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources in the claim," the more persuasive the opinion will be. 20 C.F.R. § 404.1520c(c)(2). But an ALJ is not required to compare the opinion with every piece of evidence in the record. Rather, an ALJ need only "minimally articulate" her rationale in explaining whether an opinion is consistent with the record. *See Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Evonne R. v. Kijakazi*, 20 CV 7652, 2022 WL 874650, at *5 n.4 (N.D. Ill. Mar. 24, 2022) ("the new regulation does not disturb the principle that an ALJ must consider the relevant regulatory factors and minimally articulate his reasons for crediting or discounting a medical opinion."). Here, the ALJ explained that Puls and Riley's opinions were inconsistent with the record and

7

identified specific evidence that contradicted their conclusion, so the ALJ adequately articulated her reasoning for rejecting their opinions.

The failure to address whether the opinions were consistent with each other was not error because the ALJ adequately explained why each opinion was not persuasive. "[T]wo flawed opinions do not equal a good one." *Cassens v. Saul*, 19-cv-912-jdp, 2020 WL 3316094, at *3 (W.D. Wis. June 18, 2020). The ALJ gave valid reasons for rejecting both opinions, so the ALJ's failure to credit their consistency was not error.

### 3. Ignoring other evidence in the record

Martin also contends that the ALJ cherry-picked the record, ignoring evidence consistent with Puls and Riley's opinions. Specifically, Martin contends that the ALJ ignored: (1) Martin's positive straight leg raise tests; (2) "SI joint disfunction"; (3) tenderness and diminished range of motion in the SI joint; (4) diminished sensation in the "area of the L5 dermatome"; (5) abnormal gait in some exams; (6) difficulty walking on her heels and toes; and (7) diagnoses of lumbar radiculopathy and sciatica,

It is not clear how some of this evidence supports Puls and Riley's opinions. For example, Martin does not explain what the SI joint and L5 dermatome are or how those findings would support Puls and Riley's opinions. Even so, the ALJ addressed much of the evidence Martin identifies. The ALJ acknowledged positive straight-leg tests, tenderness in the lower back, diminished range of motion and reduced sensation in the lumbar spine. R. 31. But the ALJ concluded that Martin's pain was not disabling in light of Martin's improvement after her surgery, her conservative treatment, and that Martin had demonstrated negative straight leg tests and intact sensation in other exams. R. 33.

The ALJ did not address that Martin occasionally exhibited abnormal gait, that she walked on her heels "with some difficulty," or her diagnoses of lumbar radiculopathy or sciatica. But an ALJ does not need to discuss every piece of evidence in the record. Rather, an ALJ is "prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). An ALJ is entitled to pass over evidence that does not "reveal any substantially different information about [a claimant's] problems than did the evidence that the ALJ addressed." *Id.* at 789.

The ALJ did not ignore any lines of evidence that contradicted her conclusion. The ALJ did not acknowledge that Martin occasionally demonstrated an abnormal gait in exams. *See* R. 961 ("Gait: Slightly antalgic"); R. 807 ("mildly antalgic gait on left"). And when the ALJ stated that Martin was able to walk on her heels and toes in an exam in 2020, the ALJ omitted that Martin performed that task "with some difficulty." But the ALJ acknowledged that Martin experienced back pain and demonstrated a limited range of motion. That Martin occasionally demonstrated a slightly or mildly antalgic gait and had some difficulty walking on her heels and toes does not reveal substantially different information about her back pain than the evidence the ALJ addressed. The ALJ's failure to expressly address those findings was not error. *See Deobrah M.*, 994 F.3d at 789 (ALJ entitled to ignore abnormal findings from two MRIs when ALJ acknowledged other MRIs demonstrating claimant's spinal issues); *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ entitled to ignore MRI showing mild degenerative changes in spinal discs when physicians described condition as mild or benign).

The ALJ's failure to address Martin's diagnoses of lumbar radiculopathy and sciatica. R. 544, was not error either. Those diagnoses support Martin's allegations that she suffered from back pain. But the ALJ acknowledged that Martin's back pain was the result of a severe,

9

medically determinable impairment, specifically her degenerative disc disease. Martin contends that her diagnoses of lumbar radiculopathy and sciatica demonstrate "nerve involvement" in the lower back. Dkt. 11, at 28. But Martin does not explain why pain caused by "nerve involvement" is distinct from the pain caused by her degenerative disc disease, either in general or as it relates to her ability to sit for prolonged periods. The ALJ credited Martin's testimony that she suffered from back pain, but the ALJ nevertheless concluded that Martin could perform sedentary work in light of her frequently normal test results and conservative treatment following her surgery. Under those circumstances, the ALJ was not required to discuss that Martin had been diagnosed with other impairments that would also be expected to cause her back pain.

The court discerns no error in the ALJ's assessment of Puls and Riley's opinions about Martin's ability to sit, and Martin does not challenge the ALJ's assessment of the agency consultants who opined that Martin could perform sedentary work without additional restrictions related to her ability to sit. The ALJ's analysis of the medical opinions in this case does not entitle Martin to remand.

**B. Mental limitations**

Martin contends that the ALJ did not explain how Martin's RFC accounts for the ALJ's conclusion at step three that Martin had moderate limitations in concentrating, persisting, or maintaining pace and in interacting with others.[2]

---

[2] The ALJ also found that Martin had a moderate limitation in adapting and managing oneself and a mild limitation in understanding, remembering, or applying information, but Martin does not challenge the RFC as it relates to those areas of mental functioning.

As a general rule, both the ALJ's RFC assessment and the hypothetical posed to the vocational expert must incorporate any limitations supported by the claimant's medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). However, the ALJ was not required to expressly address her findings at step three in Martin's RFC. A rating at step three is a generalized assessment of the claimant's overall abilities in a broad area, not a specific impairment. As this court has explained before, having moderate limitations in one of the four broad areas of mental functioning only places the claimant into a general category. *Rabitoy v. Berryhill*, No. 17-cv-495, 2018 WL 1010219, at *2 (W.D. Wis. Feb. 21, 2018). The question is whether the RFC "adequately account[s] for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Put another way, a plaintiff cannot show a need for "[]specific restrictions in [her] residual functional capacity simply because of the 'moderate' designation; [she] must have evidence of that need." *Lockett v. Saul*, 834 Fed. App'x. 236, 239 (7th Cir. 2020). To be entitled to remand, the claimant must cite evidence that her specific limitations would prevent her from performing work under the terms of her RFC. *See Jozefyk*, 923 F.3d at 498.

In formulating Martin's RFC, the ALJ concluded that Martin could understand, remember, and carry out simple instructions that can be learned in 30 days or less; "sustain concentration, persistence, and pace to [sic] simple instructions" for two-hour intervals with normal breaks; occasionally interact with co-workers, supervisors, and the general public; and adapt to simple workplace changes. R. 28. The ALJ included the same restrictions in the hypothetical question that she posed to the vocational expert. R. 70-71.

Martin doesn't identify any evidence that the ALJ ignored that support more significant restrictions. As for Martin's difficulties related to concentration, persistence, and pace, the ALJ

11

acknowledged Martin's testimony that she has difficulty concentrating and completing tasks. But the ALJ concluded that those allegations were inconsistent with activities that required concentration and persistence, such as taking care of her daughter, doing household chores, reading, and handling her finances, among other things. R. 27. As for Martin's limitations related to interacting with others, the ALJ acknowledged Martin's testimony that she has difficulty getting along with others. But Martin also stated that she gets along with authority figures and has never been fired from a job because of interpersonal difficulties. R. 27. Martin does not explain why the restrictions in the RFC are inadequate to address her mental difficulties. Indeed, it is "unclear what kinds of work restrictions might address [Martin's] limitations" in these areas "because [s]he hypothesizes none." *Jozefyk*, 923 F.3d at 498. And Martin does not explain why her limitations in this area prevent her from performing the jobs the ALJ determined that she could perform. Martin is not entitled to remand on this ground.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered March 30, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge